WALTER HINTON, ET AL v. STATE OF ARKANSAS EX REL.
JOE PURCELL, ATTORNEY GENERAL

4836                                              438 S.W. 2d 57

Opinion Delivered March 10, 1969

*J. W. Barron* for appellants.

*Joe Purcell,* Attorney General and *Larry W. Chandler,* Assistant Attorney General, for appellee.

*Gannaway & Darrow* amicus curiae brief.

CONLEY BYRD, Justice.   At issue here is the validity of certain regulations of the Alcoholic Beverage Control Board and "Class Six Club Permits" promulgated pursuant thereto, authorizing "Class Six" permittees to sell for consumption on the permitted premises spirituous liquors as defined by the Thorne Liquor Act, Act 108 of 1935.   The trial court held that the regulations and permits issued thereunder con-

travened the provisions of the Thorne Liquor Act and enjoined issuance of permits. Appellants Walter Hinton, John Cage and Claude Williams, Jr. as members of the Alcoholic Beverage Control Board appeal.

The regulation here involved provides in part as follows:

"The following regulations apply for Class 6 Club Permits pursuant to the provisions of Ark. Stats. 48-302 (1964 Repl.), this being Section 2 of article 3 of Act 108 of 1935 as amended . . .

"(2) No member of such Club or any officer, agent or employee shall be paid or directly or indirectly receive in the form of salary or other compensation any part of the revenue derived from the disposition or serving of alcoholic beverages beyond the amount of such salary or other compensation as may be fixed and voted at meetings by the members or by the directors or other governing body . . . .

"(5) The Holder of a Class 6 Club Permit will be authorized to serve on its permitted premises vinous, spirituous or malt liquors . . . to the Club's adult members, and the members of their families over the age of 21 and duly qualified adult guests . . . and to assess an appropriate charge therefor . . . .

"(7) Each licensee shall keep complete and accurate records of alcoholic beverages purchased . . . .

"(9) All wholesalers of alcoholic beverages are prohibited from selling to holders of Class 6 Club Permits."

The Arkansas Alcoholic Control Act, or Thorne Act, Act 108 of 1935, was enacted following the adoption of

the twenty-first amendment to the United States Constitution. This comprehensive act, providing for regulation of the manufacture, distribution and dispensing of spirituous, vinous and malt liquors through the issuance of permits, with minor amendments, is codified under Title 48 of Arkansas Statutes. It provides as follows:

## "ARTICLE I

"Section 1. The word 'person' as used in this Act shall include any and all corporations, partnerships, associations or individuals.

"Section 2. The word 'manufacturer' shall mean, unless otherwise specified, any person engaged in the business of distilling, brewing, making, blending, rectifying or producing for sale in wholesale quantities alcoholic liquors of any kind, including whiskey, brandy, cordials, liquors, also beers, or other liquids containing alcohol except wines.

"Section 3. A 'dispensary' shall mean any store which, under the provisions of this Act, and having paid all taxes required by the State, sells at retail in unbroken packages for non-consumption on the premises any intoxicating alcoholic liquor as defined by this Act.

"Section 4. The words 'Commissioner' or 'Commissioner of Revenues' refer to Arkansas State Commissioner of Revenues . . . .

## "ARTICLE II

"Section 1. The provisions of this Act shall be enforced by the Commissioner of Revenues of the State of Arkansas . . . .

"Section 3. The Commissioner of Revenues shall have the following powers, functions and duties:

"(a) To grant and revoke for cause permits issued under the provisions of this Act.

"(b) To fix by rule the standards of manufacture, rectifying and blending in order to insure the use of proper ingredients and methods in the manufacture, rectifying and blending of vinous, spirituous or malt liquors, to be sold in the State.

"(c) To adopt rules and regulations for the supervision and control of the manufacture and sale of vinous, (except wines) spirituous or malt liquors throughout the State *not inconsistent with law*.   [Emphasis ours.]

"(d) To carry on by its agents or employees inspections of any premises where beer, or spirituous liquors are manufactured for sale or sold."

## "ARTICLE III

"Section 1.   (a)   It is hereby declared to be the public policy of the State that the number of permits in this State to dispense vinous, (except wines) spirituous or malt liquor shall be restricted, and the Commissioner of Revenues is hereby empowered to determine whether public convenience and advantage will be promoted by issuing such permits . . . .

"Section 2.   No vinous, (except wines) spirituous or malt liquors shall be manufactured in this State for storage or sale at retail within the State after this Act becomes effective without a permit therefor issued by the Commissioner of Revenues as herein provided.   No person shall sell vinous, spirituous or malt liquors in this State, except as provided in this Act, provided the provisions of this Act shall not apply to the manufacturer, sale, and distribution of wines in this State.

"There shall be six kinds of permits, each of which shall be distinctive in color and design so as to be readily distinguishable from each other, to-wit: (1) Distiller's permit; (2) brewer's permit; (3) rectifier's permit; (4) wholesaler's permit; (5) dispenser's permit, and (6) hotel, restaurant or club permit.

"Section 3. (a) Any person may apply to the Commissioner of Revenues for a permit to manufacture, distill, transport, store and sell to a wholesaler, jobber or distributor spirituous, vinous (except wines) or malt liquors to be used and sold for beverage purposes . . . .

"(c) A distiller or manufacturer may, under such rules as may be adopted by the Commissioner of Revenues, sell, deliver or transport only to (1) wholesalers, (2) rectifiers, (3) export out of the State.

"Section 4. (a) Any person may apply to the Commissioner of Revenues for a permit for rectifying, purifying, mixing, blending or flavoring of spirituous liquors or the bottling, warehousing or other handling or distribution of rectified distilled spirits . . . .

"(b) Any rectifier may, under such rules as may be adopted by the Commissioner of Revenues, sell, deliver, or transport only to (1) wholesalers, (2) other rectifiers, (3) export out of the state.

"Section 5. Any person other than a distiller, manufacturer or rectifier, may apply to the Commissioner of Revenues, for a permit to sell spirituous, vinous (except wines) or malt liquors at wholesale . . . .

"No wholesaler shall sell or contract to sell any spirituous, vinous, or malt liquors to any dis-

pensary, hotel, restaurant or club, who is not duly authorized under this Act to receive, possess, transport, distribute or sell same.

"Section 6. Any person, other than a distiller, rectifier or wholesaler, may apply to the Commissioner of Revenues for a permit to sell and dispense vinous or spirituous liquors for beverage purposes at retail . . . . Such permit shall contain a description of the premises permitted and in form and substance shall be a permit to the person therein specifically designated to sell and dispense at retail spirituous or vinous liquors.

"All such sales shall be in unbroken packages and the same shall not be opened or the contents or any part consumed on the premises where purchased."

The duties of the Commissioner of Revenues set out in the 1935 Act have been transferred to appellants by Acts 1951, No. 159.

Thus we see that under Acts 1935, No. 108, the Commissioner of Revenues could only "adopt rules and regulations for the supervision and control of the manufacture and *sale* of vinous, (except wines) spirituous or malt liquors . . . *not inconsistent with law.*" By Article III, Section 1, it is provided " . . . that the number of permits . . . *to dispense* . . . liquor shall be restricted, and the Commissioner of Revenues is . . . empowered to determine whether public convenience . . . will be promoted by issuing such permits." Since a "dispensary", under Article I, Section 3, is defined as any . . . "store which . . . sells at retail in unbroken packages for non-consumption on the premises any intoxicating . . . liquor," it appears that the use of the word "dispense", as used in connection with the permits the Commissioner was authorized to supervise, should have the same limitation.

That the word "dispense" was used, in Article III, Section 1, to prohibit the on-premises consumption of intoxicating liquors is further demonstrated by Article III, Sections 2, 3, 4, 5, and 6. While it is true that section 2 provides for six classes of permits, the last of which is "(6) hotel, restaurant or club permit," it also provides that, "No person shall sell vinous, spirituous or malt liquors . . . except as provided in this Act . . . . " Under the scheme of the same Article, section 3 permits a person to apply for a distiller's or manufacturer's permit; section 4 permits a person to apply for a rectifier's permit; and section 5 permits a person to apply for a wholesaler's permit, all of whom are prohibited from selling " . . . to any dispensary, hotel, restaurant or club, who is not duly authorized under this Act to receive, possess, transport, distribute or sell same." Section 6 of the same Article permits a person to apply for a retailer's permit but with the restriction that the permit "to sell and dispense at retail . . . " shall " . . . be in unbroken packages and the same shall not be opened or the contents or any part consumed on the premises where purchased." Thus we have a statutory scheme authorizing the issuance of permits for dispensing spirituous liquors and authorizing persons to apply for distiller's permits, rectifier's permits, wholesaler's permits and retailer's permits, but no such authorization is given for a permit for on premises consumption of spirituous liquors. We can find no reason for legislative designation of permits that could be applied for except to exclude by implication application for any other type of permit, *Cook Commissioner of Revenues* v. *Arkansas Missouri Power Corp.*, 209 Ark. 750, 192 S.W. 2d 210 (1946).

Therefore we hold that appellants were not authorized to issue permits for on premises consumption of vinous, spirituous or malt liquors. It necessarily follows that the regulations for Class Six Club Permits are not authorized by law and are invalid.

Affirmed.